# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TERRANCE DYSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 06 C 680 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| STREAMWOOD BEHAVIORAL HEALTH ) | |
| CENTER, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Terrance Dyson ("Dyson") has filed a one-count complaint against his former employer, Streamwood Behavioral Health Center ("Streamwood"), asserting that Streamwood violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (2006) when it terminated him for insubordination. Specifically, Dyson claims that Streamwood subjected him to unequal discipline and less favorable working conditions on the basis of his sex. Compl. ¶ 16. Streamwood has moved for summary judgment. For the reasons stated below, Streamwood's motion is granted.

### I. BACKGROUND

The following facts are undisputed unless otherwise noted. Streamwood provides health and counseling services in a secure and locked hospital facility to children and adolescents with significant psychological and behavioral problems.

Dyson was employed by Streamwood from 1999 to 2005. He worked with pediatric and adolescent patients with severe behavioral and psychiatric problems ranging from bipolar disorders to sexual abuse. At the time he was terminated, Dyson was

1

employed as a mental health counselor. He worked primarily with children with mental issues. Compl. ¶¶ 10-11. One of his duties was to respond to patients in crisis. Because many patients at Streamwood pose a threat to themselves and others, Dyson received Crisis Prevention Intervention Training, the purpose of which is to educate employees on the proper techniques to use during a patient "crisis." A "crisis" occurs when a patient acts out in a way that may cause harm to herself or others. Dyson admits that "all mental health counselors were required to assist with crisis situations if necessary or called upon." Dyson Decl. ¶ 4. There is also no dispute that both male and female staff at Streamwood respond when a patient is in crisis. Pl.'s Resp. Def.'s Statement of Facts ¶ 12.

On June 29, 2005, K.R., an eight year old pediatric patient, began throwing things, slamming doors, and hitting his head on the door. Rachel Greenspan, a female worker, was covering the unit where K.R. was located and concluded that K.R. was in crisis. She asked her co-worker, Kristin Smith, another female worker, for assistance. Smith and Greenspan attempted to manage the crisis for several minutes. Smith eventually suggested to Greenspan that she ask Dyson for help because K.R. responded well to him, he had a good relationship and rapport with K.R., and he was close and available. Elaine Shemroske, the nurse manager, testified that K.R. also responded better to males because, based on his family history, he hated females. Greenspan asked Dyson to help with K.R.'s crisis but Dyson refused.

Dyson admits that he took Greenspan's request for help seriously and had no reason to doubt that there was an actual crisis or that his help was actually needed. Pl.'s Resp. Def.'s Statement of Facts ¶ 25. However, he refused because he had other

responsibilities, "was spent and just couldn't do it," and was under "mental duress" because of his stressful day.[1]

On her way back to the pediatric unit, Greenspan ran into Shemroske and reported that Dyson had refused to help her. Shemroske approached Dyson and asked him to assist with the crisis involving K.R. Dyson refused. Shemroske avers that she responded, "you know, if you don't go, it's insubordination." Dyson denies that she said this but admits that he knew Shemroske was giving him an order to help with the crisis situation and that failure to obey a direct order could result in termination. Dyson Dep. 101; Pl.'s Resp. Def.'s Statement of Facts ¶ 31. Dyson refused to help and Shemroske instructed him to collect his belongings and clock out.

Dyson does not dispute that Shemroske's decision to terminate his employment for insubordination was based on his refusal to respond in a crisis situation. Pl.'s Resp. Def.'s Statement of Facts ¶ 34. Nor is he aware of any female mental health counselors who have refused a supervisor's directive to assist in a patient crisis situation without being terminated. *Id.* ¶ 36.

## II. ANALYSIS

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[1] Dyson contends that Streamwood has a policy that staff should not respond to a crisis if the staff member is in a mental state such that his/her assistance would not be helpful. Under this policy, the staff member is allowed to assess his own state of mind in determining whether it would be appropriate for him to intervene in a crisis situation. Dyson states that in 2005, he was reprimanded for failing to honor the request of Danny Riviera—a male employee—to excuse himself from participating in a crisis because he said he was mentally unfit to do so at the time. Streamwood denies that such a policy exists but the dispute is immaterial; the court fails to see how the potentially dissimilar treatment of another male employee advances Dyson's claim of sex discrimination.

judgment as a matter of law." Fed. R. Civ. P. 56(c). In the consideration of a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the opposing party. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, "set[ting] forth specific facts showing that there is a genuine issue for trial." *See, e.g., Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting Fed. R. Civ. P. 56).

### A. Dyson's Declaration

As a preliminary matter, the court addresses Streamwood's motion to strike portions of Dyson's Declaration.[2] *See* Pl.'s Statement of Additional Facts Ex. A. "A party cannot prevail on a motion for summary judgment by 'submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony.'" *Adusumilli v. City of Chicago*, 164 F.3d 353, 360 (7th Cir. 1998) (quoting *Diliberti v. United States*, 817 F.2d 1259, 1263 (7th Cir. 1987).

Dyson has submitted a declaration stating that Streamwood "had a practice of requiring male mental health counselors to respond to crises in preference to female mental health counselors." Pl.'s Statement of Additional Facts Ex. A ¶ 5. Streamwood denies that such a practice exists and argues that Dyson's own admissions and deposition testimony contradict the statements in his declaration. Dyson admits in his responses to Streamwood's Statement of Facts that male and female staff at Streamwood respond when a patient is in crisis, and he has also testified that he has observed female staff

---

[2] The Dyson Declaration is admissible for purposes of summary judgment under 28 U.S.C. § 1746 (permits unsworn declarations if made "under penalty of perjury" and verified as "true and correct").

respond to crisis situations. Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 12-13; Dyson Dep. 39-40. Furthermore, Dyson admits that Streamwood does not have a policy requiring only men to respond in crisis situations and that he has never been told that only men should respond to crisis situations. Pl.'s Resp. to Def.'s Statement of Facts ¶ 14; Dyson Dep. 39-40. Therefore, to the extent Dyson is attempting to argue that *only* male mental health counselors are required to respond to crises at Streamwood, the court finds that his prior deposition testimony contradicts his declaration and strikes paragraph five of his declaration.

The court notes, however, that this does not affect the portions of Dyson's declaration and Statement of Facts stating that Streamwood had a policy of asking male mental health counselors to assist with crisis situations *first*, particularly in situations involving physical altercations, before asking female counselors for assistance. See Pl.'s Statement of Facts ¶¶ 13-14 (Female counselors were "generally called upon only as a last resort," regardless of what a male counselor's other responsibilities may have been at the time.)[3]

### B. Title VII Claim

Title VII of the Civil Rights Act of 1964 provides that it "shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1) (2006).

---

[3] Streamwood has also moved to strike paragraphs 11, 12, 16 and 23 of Dyson's Declaration, but the court finds that those paragraphs are either irrelevant or are not directly contradicted by Dyson's prior deposition testimony.

Dyson has framed his complaint of sex discrimination as a wrongful termination case. S*ee* Compl. ¶ 8 ("Defendant's termination of Plaintiff's employment is the subject of this action."); *id.* ¶ 16 ("In terminating Plaintiff, Defendant discriminated against Plaintiff on the basis of his sex."). However, throughout his brief, Dyson also refers to an alleged practice of requiring male employees to respond to crisis situations before asking female employees to do so. To the extent that Dyson is arguing that this practice created an additional burden on him based on his gender that somehow caused his termination, Dyson's argument is undermined by the undisputed fact that the first employee to be asked to assist with the crisis that ultimately led to his termination was Kristin Smith, who is female. Therefore, the court need not decide whether the existence, generally, of such a practice would violate the law because in the instant case, such a practice was in no way connected to Dyson's termination.

To prevail on his sex discrimination claim, Dyson must either show direct evidence of discriminatory motive or intent, or rely on the indirect burden-shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Dyson relies solely on the latter option.

To advance a prima facie case of gender discrimination, Dyson must establish four elements: (1) he is a member of a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) defendants treated similarly situated female employees more favorably. *See O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004). However, the *McDonnell Douglas* prima facie case is modified in reverse discrimination cases such as the one at hand because it "is the unusual employer who discriminates against majority employees." *Mills v. Health Care*

*Serv. Corp.*, 171 F.3d 450, 456-57 (7th Cir. 1999). Because Dyson is a male, the first element of the *McDonnell Douglas* framework becomes a non-issue; Dyson instead "must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against [men] or evidence that there is something 'fishy' about the facts at hand." *Gore v. Indiana Univ.*, 416 F.3d 590, 592-93 (7th Cir. 2005) (quoting *Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003)). In *Gore*, the Seventh Circuit applied the "background circumstances" requirement to conclude that the plaintiff's Title VII claim failed because he had not shown that there was anything "suspicious" about the defendant's decision not to hire him. *See Gore*, 416 F.3d at 593.

If Dyson can demonstrate a prima facie case, the burden shifts to Streamwood to articulate a nondiscriminatory justification for the action. If Streamwood can do so, Dyson must present sufficient evidence to create a triable issue concerning whether this justification is pretextual. *Id.* Because, as explained below, Dyson fails to demonstrate a prima facie case, the court does not reach the second and third steps of the burden shifting analysis—that is, whether Streamwood's termination of Dyson for subordination was not the real reason for his termination but rather a pretext for sex discrimination.

First, Dyson has not met his burden of demonstrating that Streamwood has reason or inclination to discriminate against men. Dyson argues that he was a male worker at a facility where female employees were in the majority, and where there were no men in supervisory or management positions. Pl.'s Opp. 3. Because Shemroske, the individual who supervised and terminated Dyson, was female and reported to a female herself, Dyson contends that he was not a "majority employee." Furthermore, Dyson argues that

Streamwood was the kind of "unusual employer" with the inclination to invidiously discriminate against men because Streamwood "had a preference for male counselors to handle crises [sic] situations" and that "female counselors were generally called upon only as a last resort." *Id.* at 5.

Dyson's argument falls short. Although there is little guidance in existing caselaw as to what would sufficiently constitute "background circumstances demonstrate[ing] that a particular employer has reason or inclination to discriminate invidiously against [men] or evidence that there is something 'fishy' about the facts at hand," *see Gore*, 416 F.3d at 592-93, there is no authority for the proposition that simply being a male in a predominantly female environment is enough to demonstrate such circumstances. *See, e.g., Jackson v. Ryan Intern. Airlines*, No. 03 C 1395. 2005 WL 2275942, at *19 (E.D. Wis. Sept. 16, 2005) ("[A]lthough the plaintiff asserts that he is a male flight attendant in a predominantly female dominated industry, he has not demonstrated that [defendant] had reason to discriminate against men."). Furthermore, Dyson's argument makes no sense. Assuming Dyson's allegations are true, Streamwood has no reason to discriminatorily terminate male employees; Dyson maintains that in crisis situations, it preferred calling on men rather than women. If Streamwood was motivated to fire all of its male employees, then—based on Dyson's theory—it would be left with no one who could respond to the crises.

Second, even if Dyson could establish that there was something "suspicious" about Streamwood's decision to terminate him, he fails to meet the third element of the prima facie case because he has offered no proof that Streamwood treated similarly situated female employees more favorably than Streamwood treated him. *See O'Neal*,

8

392 F.3d at 911 (to advance a prima facie case of gender discrimination, plaintiff must establish that defendants treated similarly situated female employees more favorably).

Dyson must show, *at minimum*, that a similarly situated female employee engaged in the same conduct as he did and was not terminated. A "similarly situated employee" is one who is "directly comparable to the plaintiff in all material respects." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692-93 (7th Cir. 2005) (quoting *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003)). "This normally entails a showing that the [comparable] employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000); *compare Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 543 (7th Cir. 1987) ("Even if a plaintiff shows different treatment after violations of the same rule, he or she might not succeed in establishing a prima facie case.").

Here, Dyson argues that because Streamwood asked male mental health counselors to respond to crises before asking female counselors to do so, female employees were treated more favorably.[4] However, it is not enough to demonstrate in this case that female employees were generally treated more favorably than he was; Dyson must provide evidence that female employees who engaged in the same conduct

---

[4] Dyson argues that female employees were treated more favorably because Streamwood had a policy of requiring male mental health counselors to respond to crises when female counselors were not so required. However, as discussed above, Dyson's own deposition testimony contradicts this argument.

as he did—which was to refuse an order by a supervisor to assist with a patient crisis—were not terminated.[5]

Dyson asserts that "Jackie Walker, Melissa Jackson and Melissa Bickler are female counselors that avoided responding to crisis situations, without adverse employment consequences." Pl.'s Opp. 6. However, Dyson provides no particulars about these female employees—there is no evidence that Walker, Jackson or Bickler held the same job description or were subordinate to the same supervisor as was Dyson. More importantly, Dyson does not argue that any of these employees refused a direct order by a supervisor to assist with a patient crisis. Indeed, Dyson admits that he is not aware of any female mental health counselor who refused a supervisor's directive to assist in a patient crisis situation and was not terminated. *See* Pl.'s Resp. to Def.'s Statement of Facts ¶ 36. Dyson asserts only that "women generally were allowed to get away with not responding to crises, particularly if it required physically engaging with the patient." Pl.'s Statement of Facts Ex. A ¶ 23. There is no evidence that the failure of these female employees to respond to crises was in defiance of an order or request to do so. Indeed, without knowing the circumstances under which Walker, Jackson or Bickler "avoided responding to crisis situations," the court has no way of determining whether the circumstances were similar to those in question here. *See Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007) (plaintiff was not similarly situated to employee who had violated the identical rule that plaintiff was terminated for violating but whose violation was "of significantly different severity such that they [were] not comparable"). Therefore, plaintiff's showing is insufficient to meet the "similarly situated" requirement of the prima facie case.

---

[5] The court fails to see how Dyson could make this argument given the undisputed fact that the first staff member to be asked to help with the crisis involving K.R. was Smith, who is female.

Streamwood may have acted rashly or impulsively in terminating Dyson but that does not rise to a violation of Title VII unless Dyson can prove those actions were motivated by a discriminatory animus. Dyson has simply not put forth enough evidence to support his claim that he was discriminated against on the basis of his sex. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events"). Because Dyson is unable to meet his burden of demonstrating a prima facie case, the court does not reach the question of whether Streamwood's reason for terminating Dyson was pretextual.

### III. CONCLUSION

For the foregoing reasons, Streamwood's motion for summary judgment is granted.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 25, 2007